**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 06-1140**

———————————

LIBERTY MUTUAL INSURANCE COMPANY; AMG REALTY
PARTNERS, LLP,

                                        Plaintiffs - Appellees,

        and

LIBERTY MUTUAL INSURANCE COMPANY, as Subrogee
of AMG Realty Partners, LP,

                                        Plaintiff,

        versus

CB   RICHARD   ELLIS,   INCORPORATED;   ZURICH
INSURANCE COMPANY,

                                        Defendants - Appellants.

———————————

Appeal from the United States District Court for the District of
Maryland, at Baltimore.    Richard D. Bennett, District Judge.
(1:05-cv-00324-RDB)

———————————

Submitted:  April 19, 2007            Decided:  June 29, 2007

———————————

Before WILKINS, Chief Judge, and KING and DUNCAN, Circuit Judges.

———————————

Reversed and remanded by unpublished per curiam opinion.

———————————

David B. Stratton, D. Stephenson Schwinn, JORDAN, COYNE & SAVITS, L.L.P., Washington, D.C., for Appellants. Warren D. Stephens, DECARO, DORAN, SICILIANO, GALLAGHER & DEBLASIS, L.L.P., Lanham, Maryland, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

CB Richard Ellis, Inc. and Zurich Insurance Company (Appellants) appeal a district court order granting summary judgment against them and denying their motion for summary judgment in an action prosecuted by Liberty Mutual Insurance Company and AMG Realty Partners, LLP (Appellees). We reverse and remand for entry of judgment in favor of Appellants.

I.

In March 1999, AMG and Ellis entered into a Property Management Agreement (PMA), the following provisions of which are relevant here:

> 4.1 <u>Insurance</u>. [AMG], at its expense, shall obtain and keep in force adequate insurance ... against liability for loss, damage or injury to property or person which might arise out of the occupancy, management, operation or maintenance of the Property covered by this Agreement ....
>
> ....
>
> 4.2 <u>Agent's Insurance</u>. .... [Ellis] must maintain Commercial General Liability Insurance in an amount not less than $10,000,000, Combined Single Limit naming [AMG] and Maritime Realty Corporation. [AMG] must be named as an additional insured as its interest may appear on [Ellis'] insurance policies....
>
> ....
>
> 4.4 <u>Waiver of Subrogation</u>. Any insurance carried by either party with respect to the Property or any occurrence thereon shall, if it can be so written without additional premiums or with an additional premium which the other party agrees to pay, include a clause or endorsement denying to the insurer rights of subrogation against the other party to the extent rights have been

3

waived by the insured hereunder prior to occurrence of injury or loss. Each party, notwithstanding any provisions of this Management Agreement to the contrary, hereby waives any right or recovery against the other for injury or loss due to hazards covered by such insurance.

....

8.7 <u>Indemnification</u>. A. [Ellis] shall at all times indemnify and hold harmless [AMG], its partners, members, shareholders and its and their respective officers, directors, employees and agents from and against any and all claims, losses, liabilities, actions, proceedings and expenses (including reasonable attorneys' fees, disbursements and court costs) arising out of (I) any breach of the representations and warranties made by [Ellis] in this Agreement or any breach of any term, covenant or condition to be performed or observed by [Ellis] under this Agreement, or (ii) any negligent acts or omissions or willful and deliberate misconduct by [Ellis], its employees, contractors or agents.

B. [AMG] shall at all times indemnify and hold harmless [Ellis], its partners, members, shareholders and its and their respective officers, directors, employees and agents from and against any and all claims, losses, liabilities, actions, proceedings and expenses (including reasonable attorneys' fees, disbursements and court costs) arising out of (I) ownership or operation of the Property prior to the commencement of the term of this Agreement, or (ii) any breach of the representations and warranties or covenants made by [AMG] in this Agreement or (iii) any negligent acts or omissions or willful and deliberate misconduct by [AMG], its employees, contractors or agents (other than [Ellis]).

J.A. 235-36, 243-44.

In accordance with its obligations under the PMA, AMG obtained a policy from Liberty's predecessor-in-interest, Employers Insurance of Wausau, with limits of $1,000,000 per occurrence, $2,000,000 general aggregate other than products-completed

4

operations, and $2,000,000 products-completed operations. The policy stated:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages....

Id. at 157. In addition to naming AMG as an insured, the policy also included as "an insured," "[a]ny person (other than your 'employee'), or any organization while acting as your real estate manager." Id. at 166. Finally, the policy contained the following "other insurance" provision:

> a. Primary Insurance
>
> This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary....
>
> b. Excess Insurance
>
> This insurance is excess over:
>
> ....
>
> (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

Id. at 169, 209.

Also as a result of the PMA, Ellis obtained a policy from Zurich that contained the same limits as the Wausau policy and provided:

5

>We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies....

Id. at 340.  It included the following Blanket Additional Insured-Contractual Endorsement:

>COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
>WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization with whom you have executed a written contract prior to the occurrence of a loss with respect to liability arising out of the performance of that written contract between you and that person or organization, and subject to the specific provisions of the written contract where the provisions of the contract require that the person or organization be included as an insured....

Id. at 359.  It also contained an "other insurance" provision, which states that the insurance "is excess over ... [a]ny insurance policy which extends coverage to you as a real estate manager." Id. at 295.

On March 2, 2000, Helen Fields-Moore was allegedly injured when she tripped over an electrical cord in a parking garage in Towson, Maryland that Ellis managed pursuant to the PMA.  Fields-Moore subsequently filed suit in Baltimore County Circuit Court against AMG, AMG's parking lot operator (Landmark Parking, Inc.), and other defendants.[1]  The parties eventually settled the action for $175,000, with AMG and Landmark each paying one-third of that

---

[1]Fields-Moore subsequently amended her complaint to allege claims against Ellis, but those claims were dismissed as being time-barred.

amount, and Fields-Moore agreeing to forgo collection of the remainder for 12 months or until the conclusion of this litigation.

Liberty subsequently brought suit against Appellants in federal district court, alleging that Zurich breached its duty to defend and indemnify AMG regarding Fields-Moore's claims and that Ellis breached its duties under the PMA to maintain the required insurance and to indemnify AMG in the Fields-Moore suit. Ellis later filed a third-party complaint against AMG, and the district court granted Appellees' motion to realign the parties. In considering cross-motions for summary judgment, the court concluded that consideration of the "other insurance" provisions of the two policies demonstrated that Liberty holds primary insurance for Fields-Moore's claims and Zurich holds only excess coverage. The court nevertheless determined that Ellis was obliged under the PMA to indemnify AMG regarding Fields-Moore's claims. On that basis, the district court granted summary judgment to Appellees and denied Appellants' motion.

## II.

We review the grant of summary judgment de novo, viewing the disputed facts in the light most favorable to the non-moving party. See Bacon v. City of Richmond, 475 F.3d 633, 637 (4th Cir. 2007). When reviewing the disposition of cross-motions for summary judgment, "we consider each motion separately on its own merits to

7

determine whether either of the parties deserves judgment as a matter of law." Id. at 637-38 (internal quotation marks omitted).

A.

The parties agree that Maryland law applies here and that the policies provide coverage for Fields-Moore's claims. They also do not challenge the conclusion of the district court that, absent Ellis' promise to indemnify AMG for claims such as those advanced by Fields-Moore, the Liberty policy would provide primary coverage and the Zurich policy would provide only excess coverage. Appellants argue, however, that the district court erred in ruling that, notwithstanding the language of the respective policies, Ellis' promise to indemnify AMG for Ellis' own negligence required Appellants to indemnify Appellees for the costs relating to Fields-Moore's claims. We agree.

As Appellants maintain, Ellis' indemnification promise does not apply to Fields-Moore's claims because Ellis agreed to indemnify AMG only for losses that were not covered by insurance. Although Article VIII of the PMA provides that Ellis and AMG will indemnify each other for their own negligent acts and omissions, Article IV states that "[e]ach party, notwithstanding any provisions of this Management Agreement to the contrary, hereby waives any right or recovery against the other for injury or loss due to hazards covered by" "insurance carried by either party with respect to the Property or any occurrence thereon." J.A. 236

8

(emphasis added).  These provisions, when read together, plainly demonstrate the parties' intent to indemnify each other for <u>uncovered</u> losses arising from their own negligence but to look only to their insurers, and not to each other, in the event of a covered loss.[2]  Because Fields-Moore's claims are indisputably covered by insurance, Ellis' indemnification promise does not apply. Accordingly, Zurich's policy provided only excess coverage.[3]  And, because the settlement was within the limits of Liberty's primary coverage, Zurich breached no duty by refusing to indemnify AMG for any part of the settlement, or to participate in the legal defense of those claims, <u>see</u> <u>Fireman's Fund Ins. Co. v. Rairigh</u>, 475 A.2d 509, 518 (Md. Ct. Spec. App. 1984) ("[T]he excess insurer is not obligated to defend until the primary limits are exhausted.").

---

[2]The district court concluded that this reading would "render Ellis' promise to indemnify AMG meaningless." J.A. 483.  But that is simply not the case.  The indemnification promise clearly applies to any loss for which the policies do not provide coverage.

[3]Moreover, even if Ellis' indemnification promise applied to Fields-Moore's claims, the Zurich policy still would provide only excess coverage.  As we recently held on materially identical facts, the indemnification agreement between the insureds here affects only liability between those parties; it does not define the obligations that the respective insurers have to their insureds.  <u>See</u> <u>Travelers Prop. Cas. Co. of Am. v. Liberty Mut. Ins. Co.</u>, 444 F.3d 217, 224-25 (4th Cir. 2006).  Thus, even if Ellis' indemnification promise required it to indemnify AMG for all of the costs relating to Fields-Moore's claims, that still leaves the question of which policy provides primary coverage for Ellis' liability.  That question necessarily must be resolved by the language of the respective policies, which establishes that Liberty provided primary coverage for such liability and Zurich's coverage was excess only.  <u>See</u> <u>id.</u>

B.

Our holding that Ellis' indemnification promise does not apply to Fields-Moore's suit forecloses all of Appellees' claims except the claim that Ellis breached its duty under the PMA to obtain insurance that would provide primary coverage for any claims that were also covered by AMG's insurer. This claim fails for a different reason, namely, that the PMA creates no such duty. Article IV, on which Liberty relies, requires Ellis only to "maintain Commercial General Liability Insurance in an amount not less than $10,000,000, Combined Single Limit naming [AMG] and Maritime Realty Corporation."[4] J.A. 236. But, that same article also requires AMG to obtain insurance for loss, damage or injury to property or person that might arise out of the "occupancy, management, operation or maintenance of the Property" covered by the PMA. Id. at 235. The agreement is silent regarding which insurance would be primary in the event that both covered a particular claim.

III.

In sum, the district court erred in granting summary judgment to Appellees and in denying summary judgment to Appellants.

---

[4]Ellis apparently maintained insurance in the amount of only $1,000,000. The district court noted, however, that the parties agree that this apparent failure to comply with the terms of the PMA is not at issue since Fields-Moore's claims amount to less than $1,000,000.

10

Accordingly, we reverse the district court order and remand for entry of judgment in favor of Appellants.

<u>REVERSED AND REMANDED</u>